UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARVIN HERNANDEZ LOPEZ,

      Petitioner,

  v.

                            Case No. 2:25-cv-830-KCD-NPM

DAVID HARDIN, IN HIS
OFFICIAL CAPACITY AS
WARDEN OF GLADES
DETENTION FACILITY AS
SHERIFF OF GLADES COUNTY
SHERIFF'S OFFICE; DIRECTOR,
TAMPA FIELD OFFICE, U.S.
CITIZENSHIP AND
IMMIGRATION SERVICES,
OFFICIAL CAPACITY; ACTING
DIRECTOR, U.S. CITIZENSHIP
AND IMMIGRATION SERVICES,
OFFICIAL CAPACITY;
SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,
OFFICIAL CAPACITY; AND
UNITED STATES ATTORNEY
GENERAL, OFFICIAL CAPACITY;

      Respondents.
_____/

## **ORDER**

Petitioner Marvin Hernandez Lopez filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.) He claims that ICE is holding him without a bond hearing in violation of the Immigration and Nationality Act, and his continued detention without a

hearing contravenes the Fifth Amendment. (*Id.* at 2.) Now before the Court is Lopez's request for a temporary restraining order. (Doc. 6.) For the reasons below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## I. Background

These are the relevant facts according to the existing record. Lopez entered the United States illegally in 2013. He eventually got married, had children, and started a business. After a traffic stop in 2019, Lopez sought to legalize his immigration status. He applied for "Parole in Place" until that program was cancelled. (Doc. 6 at 4.)[1] He then "elected to utilize the provisional waiver of unlawful presence process authorized at 8 U.S.C. § 1182(a)(9)(B)(v)." (*Id.*) Most recently, Lopez filed a "Form I-601A, Application for Provisional Waiver of Unlawful Presence," which remains pending before U.S. Citizenship & Immigration Services. (*Id.* at 5.)

Lopez was apprehended by ICE on his way to work last month. After processing, he landed at Glades Detention Center in the Middle District of Florida. ICE is holding Lopez under 8 U.S.C. § 1225(b)(2). (Doc. 6 at 5.) This matters because aliens detained through § 1225(b)(2) must remain in custody throughout their removal proceedings. *See Jennings v. Rodriguez*, 583 U.S.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

2

281, 297 (2018) ("[Sections] 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded.").

Despite his designated status, Lopez sought a bond hearing under 8 U.S.C. § 1226(a), which is a companion statute that applies to aliens who are "arrested and detained" on "a warrant issued by the Attorney General" for potential removal. *Id.* Unlike its counterpart, a noncitizen held under § 1226(a) can seek release. 8 C.F.R. § 1236.1(d)(1). Lopez's bond request was denied, with the immigration judge concluding that he "is subject to mandatory detention." (Doc. 1-3 at 1.) This habeas petition and TRO followed.

## II. Discussion

To obtain a temporary restraining order, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). Additionally, a court may issue temporary injunctive relief without notice to the adverse party only if:

3

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

To begin, the Court is satisfied that Lopez fulfilled the procedural requirements needed to issue a temporary restraining order. Counsel has set out specific facts showing that immediate and irreparable injury may result before the adverse party can be heard—namely, Lopez could be relocated outside this Court's jurisdiction or deported. Counsel also sent copies of the motion to the U.S. Attorney's Office and its Civil Chief. Nothing more is needed at this point.

Turning to the merits, Lopez has shown a substantial likelihood of success. Boiled down, Lopez alleges that he is unlawfully held under § 1225(b)(2), which mandates his detention, instead of under § 1226(a)'s discretionary detention scheme, where he could be eligible for release. And as a result, his continued detention without a bond hearing is unconstitutional.

The Supreme Court recently analyzed the interplay between § 1225 and § 1226 in *Jennings v. Rodriguez*. There, the Court observed that the decision of who may enter this country and who may remain "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."

*Jennings*, 583 U.S. at 287. As relevant here, the Court explained that § 1225 "applies primarily to aliens seeking entry into the United States." *Id.* at 297. By contrast, § 1226 "applies to aliens already present in the United States." *Id.* at 303. "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id*. "Section 1226(a) also permits the Attorney General to release those aliens on bond[.]" *Id.*

The Supreme Court's analysis explains the necessity for both statutes by differentiating between the detention of arriving aliens who are seeking entry into the United States under § 1225, and the detention of those who are already present in the United States under § 1226. Lower courts have adopted this same dichotomy after further analyzing the statutory text. *See, e.g.*, *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at \*5 (E.D. Mich. Sept. 9, 2025). Against this backdrop, every court to address the question presented here has found that an alien who is not presently seeking admission and has been in the United States for an extended time, like Lopez, is appropriately classified under § 1226(a) and not § 1225(b)(2)(A). These courts have also either ordered the alien's release or required a bond hearing—the exact relief Lopez seeks. *See, e.g.*, *Pizarro Reyes*, 2025 WL 2609425; *Singh v. Lewis*, No. 4:25-CV-96-RGJ, 2025 WL 2699219 (W.D. Ky.

5

Sept. 22, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025).

Lopez has likewise demonstrated irreparable injury in the absence of immediate relief. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020). Without interim relief to maintain the status quo, Lopez could be deported or removed from this Court's jurisdiction, effectively foreclosing any recourse. *See, e.g.*, *Zapeta v. Exec. Dir. of the Fla. Div. of Emergency Mgmt.*, No. 2:25-CV-00697-JLB-KCD, 2025 WL 2432501, at *3 (M.D. Fla. Aug. 22, 2025) (denying habeas petition as moot where petitioner had been deported because, "[a]s a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody").

Lastly, the balance of equities and public interest favors injunctive relief. As explained below, the Court is only ordering that Lopez remain within its jurisdiction until his habeas petition is decided. So the harm to the Government is minimal. And because Lopez is arguably detained unlawfully under § 1225(b)(2), neither equity nor the public's interest are furthered by holding him without the opportunity to seek release on bond. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) ("Of course there is a public interest in preventing aliens from being wrongfully removed[.]").

Temporary restraining orders are meant to "preserv[e] the status quo rather than grant[ ] most or all of the substantive relief requested in the complaint." *Fernandez-Roque v. Smith*, 671 F.2d 426, 430 (11th Cir. 1983). Some of the relief demanded in the TRO is identical to what Lopez seeks in his underlying habeas petition. (Doc. 1 at 34-35.) So the TRO is denied insofar as it requests that Respondents be enjoined from (1) "denying him release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C § 1225(b)(2)," and (2) "continuing to detain [him] unless he is provided with an individualized bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a) within three (3) days." (Doc. 6 at 22-23); *see also Maldonado v. Cnty. of Duval*, No. 3:17-CV-160-J-20JBT, 2017 WL 6611326, at *2 (M.D. Fla. Oct. 24, 2017). The Court will, however, temporarily enjoin Respondents from transferring or relocating Lopez outside the jurisdiction of the Middle District of Florida pending a ruling on the habeas petition. This relief makes sense given that Lopez's rights are not violated by the mere fact of his detention. Rather, they are allegedly violated because he has been detained without a bond hearing that accords with due process. *See, e.g.*, *Chogllo Chafla v. Scott*, No. 2:25-CV-00437-SDN, 2025 WL 2531027, at *3 (D. Me. Sept. 2, 2025); *Co Tupul v. Noem*, No. CV-25-02748-PHX-DJH (JZB), 2025 WL 2426787, at *2 (D. Ariz. Aug. 4, 2025).

7

The Court also exercises its discretion to dispense with Rule 65(c)'s bond requirement. There is no realistic likelihood of harm to the Respondents from the relief ordered. Thus, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Ajugwe v. Noem*, No. 8:25-CV-982-MSS-AEP, 2025 WL 1370212, at *10 (M.D. Fla. May 12, 2025).

For these reasons, Lopez's Emergency Motion for a Temporary Restraining Order (Doc. 6) is **GRANTED**. Respondents are enjoined from removing Lopez from the Middle District of Florida. This order will remain in effect until October 9, 2025. The motion is otherwise **DENIED**.

**ORDERED** in Fort Myers, Florida on September 25, 2025.

Kyle C. Dudek
United States District Judge

8