UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARVIN HERNANDEZ LOPEZ,

        Petitioner,

    v.

        Case No. 2:25-cv-830-KCD-NPM

DAVID HARDIN, *et al.*;

        Respondents.

_____/

## ORDER

Petitioner Marvin Hernandez Lopez has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act (INA), and his continued detention without a hearing contravenes the Fifth Amendment and Administrative Procedure Act. (*Id.* at 2.) For the reasons below, the petition is **GRANTED IN PART AND DENIED IN PART**.

### I. Background

These are the relevant facts taken from the record. Lopez entered the United States illegally in 2013. (Doc. 1 ¶ 15.) He eventually got married, had children, and started a business. (*Id.* ¶¶ 16-17.) After a traffic stop in 2019,

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Lopez sought to legalize his immigration status. (*Id.* ¶¶ 26-29.) He applied for "Parole in Place" until that program was cancelled. (Doc. 6 at 4.) He then "elected to utilize the provisional waiver of unlawful presence process authorized at 8 U.S.C. § 1182(a)(9)(B)(v)." (*Id.*) Most recently, Lopez filed a "Form I-601A, Application for Provisional Waiver of Unlawful Presence," which remains pending before U.S. Citizenship & Immigration Services. (*Id.* at 5.)

Lopez was apprehended by ICE on his way to work two months ago. (Doc. 1 ¶ 34.) After processing, he landed at Glades Detention Center in the Middle District of Florida. (*Id.*) ICE is holding Lopez under 8 U.S.C. § 1225. (Doc. 6 at 5.) This matters because aliens detained through § 1225(b)(2) must remain in custody throughout their removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("[Sections] 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded.").

Despite his designated status, Lopez sought a bond hearing under 8 U.S.C. § 1226(a), which is a companion statute that applies to aliens who are "arrested and detained" on "a warrant issued by the Attorney General" for removal. *Id.* Unlike its counterpart, a noncitizen held under § 1226(a) can seek release. 8 C.F.R. § 1236.1(d)(1). Lopez's bond request was denied, with the immigration judge concluding that he "is subject to mandatory

detention." (Doc. 1-3 at 1.) He is now in removal proceedings and being held under a "Notice to Appear" that charges him with unlawfully entering the United States. (Doc. 19-1.)

Through this suit, Lopez seeks "a writ of habeas corpus directing Defendants-Respondents to immediately release [him] from custody under reasonable conditions of supervision or, in the alternative, to conduct a bond redetermination hearing or other individualized and constitutionally adequate hearing under 8 U.S.C. § 1226(a)." (Doc. 1 at 34.) He also asks the Court to "declar[e] [his] continued detention to be contrary to law, arbitrary and capricious, and violative of the Fifth Amendment of the U.S. Constitution." (*Id.* at 35.)

## II. Discussion

The heart of this case is a question of statutory interpretation involving the interplay between 8 U.S.C. §§ 1225 and 1226. Under the latter provision, "an alien may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). The government "may continue to detain the arrested alien" during removal proceedings or "may release" him on bond or conditional parole. *Id.* § 1226(a)(1)-(2). An alien detained under this discretionary provision is entitled to a bond hearing. *See* 8 C.F.R. § 236.1(d)(1).

Section 1225 applies primarily to aliens seeking entry into the United States—"'applicants for admission' in the language of the statute." *Jennings*, 583 U.S. at 297. Certain applicants are subject to expedited removal. 8 U.S.C. § 1225(b)(1)(A)(i). Otherwise, § 1225 provides "that an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted . . . shall be detained" for removal proceedings. *Id.* § 1225(b)(2)(A).

According to Lopez, the Attorney General is unlawfully holding him under § 1225(b)(2), which mandates his detention, instead of under § 1226(a)'s discretionary detention scheme, where he could be eligible for release. As a result, his continued detention without a bond hearing is unconstitutional. But before reaching the merits of this issue, the Court must first consider its jurisdiction. *See Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *3 (W.D. Tex. Sept. 22, 2025) ("Because it concerns the Court's power to decide the case, jurisdiction is always first.").

Federal courts have limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "For that reason, we cannot extend the court's hand to seize topics Congress has put beyond our reach." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021).

Several sections of the INA curtail the jurisdiction of federal district courts in immigration cases. *See Jennings*, 583 U.S. at 292-96. One such

jurisdiction-stripping statute is 8 U.S.C. § 1252(g). It says that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* This provision "limits habeas corpus jurisdiction, including under § 2241." *Islas v. DHS/ICE Off. of Chief Couns. - ATD*, No. CV 323-002, 2023 WL 2761710, at *1 (S.D. Ga. Jan. 23, 2023); *see also Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 961 (11th Cir. 2015).

Section 1252(g) does not cover "all deportation-related claims." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 478 (1999). It has a far narrower reach. It forecloses judicial review of three discrete actions by the Attorney General: her "decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 482. As the Supreme Court recently reiterated, § 1252(g) does not "sweep in any claim that can technically be said to arise from the three listed actions." *Jennings*, 583 U.S. at 294. Instead, it "refer[s] to just those three specific actions themselves." *Id.*

Deciding whether a claim falls under § 1252(g) is not always easy. That's because nearly all grievances brought in this context have some connection to the discrete acts of commencing proceedings, adjudicating cases, or executing removal orders. Indeed, any issue an alien encounters

during removal arises, in a but-for sense, from the Attorney General's decision to commence the case. *See Kong v. United States*, 62 F.4th 608, 613 (1st Cir. 2023). So when "asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

Respondents focus on detention. They say the action challenged here is the Attorney General's detention of Lopez. And in the Eleventh Circuit at least, "detaining an alien while a removal determination remains pending constitutes an action taken to commence proceedings" under § 1252(g). (Doc. 19 at 6 (citing *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013).)

The Court cannot agree. The core of this case is not about detention. It's about how the Attorney General has misclassified Lopez as an "applicant for admission" under § 1225 instead of a deportable alien under § 1226. Detention is just the automatic result of that classification decision. *See, e.g.*, *Arce v. Trump*, No. 8:25CV520, 2025 WL 2675934, at *3 (D. Neb. Sept. 18, 2025) ("[T]he operative mechanism of the petitioner's detention is an automatic stay of release on bond[.]"). To be sure, Lopez focuses on his detention. But that's simply because it's the consequence he wants alleviated. The substantive action challenged is the Attorney General's decision to "reclassify [Lopez and] all undocumented aliens in the United States as applicants for admission" under § 1225. (Doc. 1 at 3.)

6

Viewing Lopez's petition through the correct lens—that is, a challenge to the Attorney General's use of § 1225 and its automatic detention hold—the Court is satisfied of its jurisdiction. Remember, § 1252(g) does not encompass "the universe of deportation claims." *Reno*, 525 U.S. at 482. It covers "just three discrete actions: actions to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Camarena*, 988 F.3d at 1272 (emphasis in original). "And although many other decisions or actions may be part of the deportation process, only claims that arise from one of the covered actions are excluded from our review (at least by this provision)." *Id.* Lopez is not asking this Court to block the commencement or adjudication of his case. Nor does he question the decision to try to execute his (future) removal order. Lopez is merely asking the Attorney General to provide him with the procedures that Congress has mandated for aliens in his shoes. Challenging how an alien is classified between §§ 1225 and 1226, like here, is best understood as independent of, and collateral to, the removal process because it may be resolved without affecting the Attorney General's prosecutorial discretion that § 1252(g) was meant to preserve. *See Reno*, 525 U.S. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion.").

One last note before moving on. Interpreting § 1252(g) to bar all detention-related claims—the effective result of Respondents' proposed

7

reading—would raise serious constitutional concerns. Absent the right to judicial review through a habeas petition, the government could detain noncitizens indefinitely without needing to provide a justification to anyone. The Supreme Court has already thrown cold water on that approach. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

Next up is the so-called "zipper clause," which "bars review of claims arising from 'action[s]' or 'proceeding[s] brought to remove an alien.'" *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1896, (2020) (quoting 8 U.S.C. § 1252(b)(9)). This discussion can be short. The Eleventh Circuit has held "that the zipper clause only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC*, 964 F.3d at 1257. Lopez is not challenging a removal order. Indeed, he doesn't have one. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

Respondents press no other jurisdictional arguments, so we turn to the merits. Lopez alleges that his automatic and unassailable detention violates the INA. As mentioned, the key question is whether Lopez is an "applicant for admission" under § 1225, which mandates detention, or a deportable alien under § 1226(a), which allows for release on bond. According to Respondents, Lopez falls into the former category because he entered the United States

without inspection. (Doc. 19 at 8-11.) Lopez, in turn, argues that he is not an "applicant for admission" because he has been living in this country for years, so § 1226(a) applies.

The Supreme Court recently analyzed the interplay between § 1225 and § 1226 in *Jennings v. Rodriguez*. There, the Court observed that the decision of who may enter this country and who may remain "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. As relevant here, the Court explained that § 1225 "applies primarily to aliens seeking entry into the United States." *Id.* at 297. By contrast, § 1226 "applies to aliens already present in the United States." *Id.* at 303. "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.* "Section 1226(a) also permits the Attorney General to release those aliens on bond[.]" *Id.*

The government followed this dichotomy "for the past three decades." *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025). That is, until July 8, 2025, when the Department of Homeland Security announced a change:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1).

9

> **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

*ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission*, AILA Doc. No. 25071607 (July 8, 2025); *see also Merino v. Ripa*, No. 25-23845-CIV-MARTINEZ, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025) (discussing the memo).

Courts around the country have since rejected the government's new interpretation. *See Pizarro Reyes*, 2025 WL 2609425, at *7 (collecting cases). This Court now joins the consensus.

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." *Id.* The use of "arriving" indicates that the statute governs incoming noncitizens, not those present already. This is supported by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2). These limited and more specific methods of entry suggest that § 1225 applies to noncitizens arriving at a border or port and are presently "seeking admission" into the United States.

Context points in the same direction. Courts are meant to "construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015).

As mentioned, the Supreme Court has identified § 1226 as the "default rule" applicable "to aliens already present in the United States." *Jennings*, 583 U.S. at 281, 288. "That Congress separated removal of arriving aliens from its more general section for 'Apprehension and detention of aliens,' § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." *Pizarro Reyes*, 2025 WL 2609425, at *5.

Finally, accepting Respondents' argument would leave § 1226 superfluous. Interpreting § 1225 to govern all noncitizens present in the country who had not been admitted leaves § 1226 with no apparent application. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

It is undisputed that Lopez has been in the United States since at least 2013. His detention is thus governed by § 1226. And as a noncitizen detained under § 1226, Lopez is entitled to a bond hearing. *See Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.").

Lopez has shown that he is being held in violation of his rights under the INA. He is thus entitled to habeas relief. *See Oscar v. Ripe*, 751 F. Supp. 3d 1324, 1329 (S.D. Fla. 2024) ("Title 28 U.S.C. § 2241 grants federal courts

the authority to issue writs of habeas corpus whenever an individual is [i]n custody in violation of the Constitution or laws or treaties of the United States."); *Zadvydas*, 533 U.S. at 687-88 (remarking "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

Lopez seeks a "writ of habeas corpus directing [Respondents] to immediately release [him] from custody under reasonable conditions of supervision or, in the alternative, to conduct a bond redetermination hearing or other individualized and constitutionally adequate hearing under 8 U.S.C. § 1226(a)." (Doc. 1 at 34.) The Court cannot release Lopez. "[Section] 1226(a)(1) grants the executive branch discretion to determine whether to detain or release a noncitizen who is facing removal proceedings." *Hulke v. Schmidt*, 572 F. Supp. 3d 593, 596 (E.D. Wis. 2021). Lopez is an alien without lawful status. So he is entitled to a bond hearing under § 1226(a), not immediate release. *See, e.g.*, *Lopez-Arevelo*, 2025 WL 2691828, at *12. Consistent with the "comfortable majority position," the Court will instead require Respondents to provide Lopez with the statutory process required under § 1226(a), which includes a bond hearing. *Id.*

One last issue. Lopez's petition also challenges his detention under the Fifth Amendment and the Administrative Procedure Act. These claims are not addressed "given that the Court [is granting] the relief [Lopez] seeks

based on its interpretation of the applicability of § 1226(a)." *Pizarro Reyes*, 2025 WL 2609425, at \*8. If Respondents do not provide Lopez with a bond hearing as ordered, he can renew his Fifth Amendment and APA claims in a subsequent complaint.

### III. Conclusion

For the reasons given, Lopez's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 1) is **GRANTED IN PART AND DENIED IN PART**. The Court orders Respondents to provide Lopez with the statutory process required under § 1226, which includes a bond hearing. All other relief is **DENIED**. The Clerk is directed to terminate any pending motions and deadlines and close the case.

**ORDERED** in Fort Myers, Florida on October 29, 2025.

Kyle C. Dudek
United States District Judge